IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISOPHER MICHAEL SMITH, )<br>        Plaintiff, )<br>v. )<br>         )<br>SOUTHWEST VIRGINIA REGIONAL )<br>JAIL-ABINGDON, *et al.*, )<br>        Defendants. ) | Civil Action No. 7:15CV00683<br><br>By: Elizabeth K. Dillon<br>United States District Judge |

**MEMORANDUM OPINION**

Christopher Michael Smith, a Virginia inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983. In his amended complaint, Smith alleges that the defendants did not provide prompt and appropriate medical care when he suffered a clot in his aortic artery. The defendants have filed dispositive motions, and Smith has responded making this matter ripe for disposition. Having reviewed the record, the court concludes that the defendants' motions must be granted.

I.

In December 2014, Smith was incarcerated at the Southwest Virginia Regional Jail ("the jail") in Abingdon, Virginia.[1] Around 7:00 p.m. on December 29, Smith started having numbness in his legs and voided on himself and asked for medical attention. When Nurse Earla Stacy came to Smith's cell, he was allegedly in "great pain and could barely even walk." Stacy told him to take Ibuprofen and do stretching exercise, and she would come back to check on Smith. She also allegedly told him to "suck it up." Smith alleges that he begged for medical attention all night, and correctional officers reported his complaints to the medical unit, but no medical personnel came to examine Smith.

---

[1] Since filing this action, Smith has been transferred to Bland Correctional Center.

The next morning Nurse Practitioner ("NP") Crystal Large examined Smith in the medical unit and sent him to a local hospital. From there, Smith was transported to the University of Virginia Medical Center ("UVA"), where he underwent emergency surgery to remove a blood clot in his aortic artery.

Smith returned to the jail on January 5, 2015. His treating physician at UVA had prescribed sixty oxycodone tablets, two every four hours, for pain. Large changed the medication dosage. Smith says that he suffered serious pain, allegedly because the jail staff did not follow the UVA doctor's prescription. After some time, Smith was returned to UVA for additional treatment of an infection. He alleges that, thereafter, he was released "on house arrest early due to the negligence of staff" at the jail.

In his amended complaint, Smith sues the following jail employees, seeking monetary damages: Superintendent Stephen Clear, Nurse Stacy, and NP Large.[2] Smith complains that all the defendants violated his right under the Eighth Amendment to receive adequate medical treatment, alleging that he was in "serious medical need and never received any kind of help." The superintendent has filed a motion to dismiss, and the other defendants have filed motions for summary judgment.

II.

The defendants do not dispute that Smith suffered from a serious medical condition in December 2014 and January 2015. On summary judgment, they offer evidence in support of their arguments that they were not deliberately indifferent to his medical needs at any time.

---

[2] In his initial complaint, Smith named only the jail itself. The court notified Smith that § 1983 authorizes lawsuits against "persons" for violations of constitutional rights and granted him an opportunity to amend to identify such defendants. In the amended complaint, Smith identifies only three defendants: Clear, Stacy, and Large. Accordingly, the court will construe the amended complaint as abandoning Smith's original claim against the jail and, as such, will dismiss all claims against the jail without prejudice.

2

Nurse Stacy has been a licensed practical nurse ("LPN") since 1975. At approximately 6:50 p.m. on December 29, 2014, she was distributing medication to inmates in the jail population when officers notified her of Smith's medical complaints. Stacy went to Smith's cell to assess his condition. Smith reported that his legs had become numb and he had voided himself. He stated that he had been at recreation earlier in the day, but denied any recent traumatic injury, although he mentioned having been stabbed in his lower back in the past. Stacy observed that Smith appeared restless and was moving both of his legs. She checked his vital signs; blood pressure, pulse, respiration, and oxygen saturation were all within normal limits. In her visual assessment of Smith, she saw nothing abnormal. Based on Smith's complaints and the results of the examination, Stacy administered Ibuprofen (400 mg BID x 5 days), suggested compresses with stretching, and told him to follow up with the medical staff if his problem persisted.

Later that evening, Stacy recalls, she observed Smith ambulate about the cell pod with no noted difficulty. While Stacy was busy with her own evening duties, officers reported that Smith was complaining of pain. At approximately 9:30 p.m., Stacy contacted the answering service of the doctor on call, Dr. Moreno, to notify the doctor of Smith's complaints of pain and numbness. Stacy did not receive a call back from Dr. Moreno or learn of any other complaints from Smith before her shift ended. She left the facility shortly after midnight, after updating her replacement. Stacy's interactions regarding Smith are reflected in her chart notes, recorded in the first half hour of December 30, 2014. Stacy denies receiving any other calls from officers on Smith's behalf on the evening of December 29.

Large is a licensed nurse practitioner who worked as an independent contractor for the Virginia Department of Corrections to provide medical services to inmates at the jail. On

3

December 29, 2014, Large worked a shift at the jail that ended at 5:00 p.m. Smith alleges that he first reported his symptoms to officers an hour or two after that time—around 7:00 p.m.

The next day, Large worked a shift that began at 8:30 a.m. Smith arrived at the medical unit shortly thereafter, in a wheel chair, and Large examined him just after 9:00 a.m. Smith complained of numbness in his lower back and legs, stating that he could not feel his legs when he lay on his back and that he was incontinent of stool. Large noted that before this exam, she had not heard about Smith's condition or complaints. Large decided to send Smith to the local hospital's emergency room. In the meantime, she ordered medications for Smith's pain and high blood pressure, and he received his first doses before his departure. As discussed, the emergency room staff transferred Smith to UVA, and surgery followed to remove a clot from his aortic artery.

When Smith returned to the jail on January 5, 2015, Large reviewed prescriptions that a UVA doctor had written for him: a stool softener, a blood thinner, and Oxycodone, a narcotic pain medication. Large states that when an outside physician writes a prescription for a jail inmate, it is a recommendation that Large can accept or reject, based on her professional assessment of the inmate as her patient and her medical judgment as a nurse practitioner. The UVA doctor's prescription ordered sixty Oxycodone pills for Smith, to be administered two pills every four hours as needed. Large was concerned that taking sixty narcotic pills over five days would result in severe opiate withdrawal for Smith when the prescription ended and would provide a shortened timeframe for alleviation of Smith's pain. Accordingly, Large wrote a different prescription, ordering forty-two Oxycodone pills to be administered in a tapering dose over the course of fourteen days as needed. Large judged that this prescription allowed adequate pain control for a two-week period. On January 8, however, in addition to the Oxycodone order,

4

Large wrote a prescription for Smith to take Ibuprofen for ten days to address breakthrough pain. Large states that as a nurse practitioner, she does not administer the medications she prescribes to her patients at the jail; the jail nurses perform this function.

On January 11, 2015, a nurse reported that Smith had developed an infection at his surgical incision site. Large immediately ordered a prescription for oral antibiotics and a shot of antibiotics to initiate the healing process.

III.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). If the evidence of a genuine issue of fact material to the plaintiff's § 1983 claim "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment,

5

however. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").

Smith asserts that Stacy and Large violated his Eighth Amendment right to medical care while in jail.[3] To establish a violation of this right requires proof that: (1) objectively, the prisoner plaintiff was suffering from a serious medical need and (2) subjectively, each defendant acted with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

> Deliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Basically, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. A prison official is not liable if he knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

*Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). If the official knows a risk of serious harm exists and intentionally denies or delays medical care or access to such care, or intentionally interfere[s] with the treatment once prescribed," such conduct may "constitute[ ] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 103-05 (internal quotation marks and citations omitted).

---

[3] It is not clear from his pleadings whether Smith was a pretrial detainee or a convicted felon at the time of the alleged violations. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. *Id.* However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates in the context of medical care. *See Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).

6

"[A]n inadvertent failure to provide adequate medical care" or physician negligence "in diagnosing or treating a medical condition" does not amount to deliberate indifference. *Estelle*, 429 U.S. at 105, 106. Similarly, the "deliberate indifference standard is not satisfied by . . . mere disagreement concerning [q]uestions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (internal quotation marks and citations omitted) (holding that question of medical judgment is not subject to judicial review in § 1983 action). "The correct question is whether the doctor subjectively 'knows of' the serious medical condition itself, not the symptoms of the serious medical condition. . . . Thus, 'consciousness of a risk' of serious harm is required." *Johnson*, 145 F.3d at 168 (internal quotation marks and citations omitted).

In the *Johnson* case, the treating physicians knew of and tried to treat the plaintiff's symptoms, including enlargement of his hands and feet and blurring of his vision. *Id.* at 165. The plaintiff presented no evidence, however, that the doctors knew about the pituitary gland tumor that was the cause of the symptoms. *Id.* at 168-169. "Without evidence that the doctors 'bridged the gap' between the symptoms and the tumor itself," the plaintiff failed to show deliberate indifference, and the doctors were entitled to summary judgment.[4] *Id.* Finally, an official who responds reasonably to a known risk of serious harm cannot be held liable for a

---

[4] The *Johnson* plaintiff's story ended in tragedy:

> Johnson was released from prison on November 21, 1994. On November 22, 1994, he lost sight in his left eye. The next day, he made an appointment at [UVA]'s Health Sciences Center. The first available appointment was not until late January 1995. On January 4, 1995, Johnson lost sight in his right eye. An ophthalmologist at [UVA] then agreed to examine Johnson on an emergency basis. The ophthalmologist diagnosed Johnson's vision problems as stemming from a pituitary tumor. Although the tumor was removed through surgery, it had already compressed Johnson's optic nerve leaving him blind.

145 F.3d at 165-66. Nevertheless, because the plaintiff failed to raise a genuine issue of material fact that the treating doctors "subjectively knew about his pituitary tumor and failed to treat it," the district court properly granted summary judgment for the doctors. *Id.* at 169-70.

7

constitution violation, "even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

The court has no difficulty in concluding, without dispute from the defendants, that Smith suffered from a serious medical condition when he reported his symptoms of leg numbness and pain to Stacy on December 29, 2014. The court also concludes, however, that Smith has failed to forecast admissible evidence that Stacy or Large violated his constitutional rights.

Neither of these defendants denied or delayed medical care for Smith's condition. When Stacy learned of Smith's complaints, she came to his cell, assessed his vital signs, observed his movements, listened to his reported symptoms, provided pain medication for a few days, and advised compresses and stretching. She told Smith to ask for medical care again as needed.[5] When Stacy learned that Smith was complaining of pain a few hours later, she called Dr. Moreno for further orders that did not come during her shift. Similarly, when Large first learned of Smith's complaints at the start of her shift on the morning of December 30, 2014, she assessed his condition, arranged for his transport to the emergency room, and provided medication for his pain. Smith presents no admissible evidence to show that Stacy or Large must have known from the facts before them that Smith had a serious heart problem requiring a different treatment response than was provided.

In response to defendants' motions, Smith contends that his amended complaint states "all facts" for trial, unspecified doctors and officers will testify on his behalf and he will present medical records. The court unequivocally notified Smith of the time limit for submitting such

---

[5] Stacy denies Smith's allegation that she told him to "suck it up" when he complained of pain and numbness in his legs. The parties' dispute over this allegation is not material to any element of Smith's deliberate indifference claim, however. As stated, other evidence establishes that Stacy provided Smith medical assessment and treatment and sought a doctor's opinion about Smith's continued complaints. At the most, the alleged comment, while unprofessional and uncaring if true, constituted verbal abuse not actionable under § 1983. *See Henslee v. Lewis*, 153 Fed. App'x 178, 180 (4th Cir. 2005) (holding allegations of verbal abuse and harassment by guards, without more, do not state any constitutional claim) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

8

evidence for consideration in this summary judgment stage of the case,[6] and that time has passed without any motion from Smith requesting additional time to respond to the defendants' motions.[7] At the most, Smith alleges that doctors at the emergency room and UVA supposedly told him: "because of the poor conduct of the [jail] and by them waiting till the next day to treat [his] medical needs [he] would need emergency surgery" (Docket No. 35, at 2); and "because this was not addressed sooner it [almost] cost [Smith his] life. Also if it would have been addressed sooner it would have been a simple surgery instead of emergency surgery." (*Id.*, at 3).

These conclusory allegations about others' out-of-court statements cannot defeat a motion for summary judgment supported with affidavits and corroborated with unchallenged medical records. Smith has not offered affidavits or sworn declarations, stating the expected testimony that he or his witnesses would give; nor has he explained how such testimony or any additional medical records would contradict the specific evidence the defendants have submitted about his course of treatment. *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay offered on summary judgment). Moreover, the alleged statements from the outside doctors suggest, at the most, their opinions that someone at the jail negligently failed to identify more quickly that Smith's symptoms signaled a heart blockage. Such allegations of mere negligence are not

---

[6] Immediately after the defendants filed their motions, the court notified Smith:

> The Court will give Plaintiff twenty-one (21) days from the date of this Notice to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding Defendant[s'] evidence.
> . . . .
> If Plaintiff wishes to continue with the case, it is necessary that Plaintiff respond in an appropriate fashion. Plaintiff may wish to respond with counter-affidavits or other additional evidence as outlined above.

(Notice 1, ECF No. 34.)

[7] Smith twice moved for appointment of counsel, but the court promptly denied these requests.

9

actionable under § 1983. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

For the stated reasons, Smith has not presented a genuine issue of material, disputed fact on which he could persuade a jury (a) that Stacy or Large knew the symptoms they observed signaled the serious heart condition later discovered by the doctors at the emergency room and treated at UVA or (b) that Stacy or Large responded unreasonably to Smith's condition as they perceived it. Indeed, it is undisputed that as soon as Large learned, or could have learned, of Smith's symptoms and assessed his condition, she arranged for his transport to the emergency room for further assessment and care. Based on this record, the court will grant summary judgment for these defendants as to Smith's claims that they were deliberately indifferent to his serious heart condition in December 2014.

Smith raises a separate claim against Large for interfering with the UVA doctor's prescription for pain medication in January 2015, thus allowing Smith to suffer inadequately treated pain. Smith offers no admissible evidence contradicting the evidence that as the nurse practitioner for the jail's inmates, Large had authority to adjust an outside doctor's recommendation for medication or dosage. It is also undisputed that in her medical judgment, Large changed Smith's Oxycodone prescription to optimize its overall effectiveness and minimize risk and added Ibuprofen for breakthrough pain. When he developed infection, Large prescribed multiple antibiotics and had Smith transferred to UVA for more intensive treatment. This court cannot second guess the correctness or advisability of such medical judgments.

Moreover, Smith's mere disagreement with Large's treatment decisions about his medications cannot support a finding of deliberate indifference. The court concludes that Large

10

Case 7:15-cv-00683-EKD-RSB   Document 40   Filed 12/08/16   Page 10 of 12   Pageid#: 188

is entitled to summary judgment as to Smith's claim that she was deliberately indifferent to his serious medical need for appropriate medication in January 2015, following his heart surgery.

IV.

Finally, the court will grant Superintendent Clear's motion to dismiss.[8] Smith apparently argues that Clear, as the supervising official at the jail, is liable to him under § 1983 for the constitutional violations allegedly committed by Stacy and Large. This argument has no merit for three reasons. First, as stated, the court concludes that Smith fails to present any disputed fact to persuade a jury that Stacy and Large committed any constitutional violation. Second, even if one of these defendants had violated Smith's constitutional rights in some way, supervisory officials like Clear may not be held vicariously liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Third, because Smith does not state facts showing that Clear, through his own "individual actions [or inactions], has violated the Constitution" or caused others to violate it, the § 1983 claim against this defendant fails. *Id.*; *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (holding that supervisory liability under § 1983 requires showings that official had actual or constructive knowledge of risk of constitutional injury and was deliberately indifferent to that risk, and that there is an affirmative causal link between the injury and supervisory official's inaction). *See also Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (same).

---

[8] Consistent with the governing standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept Smith's factual allegations as true and construe them in the light most favorable to Smith. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010). A motion to dismiss challenges the legal sufficiency of a plaintiff's complaint to determine whether he has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

V.

For the stated reasons, the court will grant Defendant Clear's motion to dismiss and will grant the other defendants' motions for summary judgment and dismiss this action with prejudice.

An appropriate order will be entered.

Entered: December 8, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge